## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TERESA L. C.,                              )
                                           )
                 Plaintiff,                )
                                           )
vs.                                        )          Case No. 21-CV-207-JFJ
                                           )
KILOLO KIJAKAZI,[1]                        )
Acting Commissioner of Social Security,    )
                                           )
                 Defendant.                )

### OPINION AND ORDER

Plaintiff Teresa L. C. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

### I.   General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy. *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

On July 20, 2017, Plaintiff, then a 49-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits.  R. 14, 276-87.  Plaintiff alleges that she has been unable to work since an amended onset date of December 18, 2017, due to sleep apnea and narcolepsy.  R. 71-72, 308.  Plaintiff's claims for benefits were denied initially and on reconsideration.  R. 106-55.  ALJ James Stewart conducted an administrative hearing and issued a decision on May 21, 2020, denying benefits and finding Plaintiff not disabled.  R. 14-29, 35-81.  The Appeals Council denied review on October 22, 2020 (R. 4-8), rendering the

Commissioner's decision final.  20 C.F.R. §§ 404.981, 416.1481.  On April 7, 2021, the Appeals Council extended the time for Plaintiff to file an appeal.  R. 1.  Plaintiff filed this appeal on May 19, 2021.  ECF No. 2.

The ALJ found that Plaintiff's date last insured is December 31, 2018.  R. 17.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 18, 2017.  *Id.*  At step two, the ALJ found that Plaintiff's obstructive sleep apnea, obesity, and adjustment disorder with depressed mood were severe impairments, but that her allergic rhinitis was non-severe.  *Id.*  The ALJ found Plaintiff's alleged impairment of narcolepsy was not medically determinable.  *Id.*  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  R. 17-20.

After evaluating Plaintiff's hearing testimony, the medical source opinion evidence, and the objective medical evidence in the record, the ALJ concluded that Plaintiff had the RFC to perform a range of light work with the following limitations:

> The claimant should not climb ladders, ropes, or scaffolds.  Stooping, crouching, crawling, kneeling, balancing, and climbing of ramps or stairs can be done occasionally.  She should not be exposed to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (note that all moving machinery is not dangerous – such as machinery where moving parts are shielded).  There should be no exposure to elevated levels of fumes, dust, gases, odors, poor ventilation, or other respiratory irritants (elevated level means concentrations in excess of that normally found in modern office buildings or light manufacturing facilities).  Due to mental impairments, the claimant is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that requires only that she be able to understand, remember, and carry out simple instructions.  The claimant can maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods.  The claimant can relate to supervisors and co-workers adequately for work related purposes, and can adapt to a work situation.  The claimant can have occasional contact with the general public.

R. 20.

Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could return to her past relevant work as a cashier as generally performed. R. 26-27. At step five, the ALJ additionally found that Plaintiff could perform other occupations existing in significant numbers in the national economy, including laundry folder, assembler (small parts), and price marker. R. 27-28. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 28. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id.*

### III.   Issues

Plaintiff raises four points of error in her challenge to the Commissioner's denial of benefits, which the undersigned re-organizes into five for clarity: (1) the ALJ failed to consider all of Plaintiff's impairments at step two of the sequential analysis; (2) the ALJ failed to conduct a proper analysis pursuant to *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996), at step four; (3) the ALJ improperly evaluated the medical source opinion from consultative examiner Dr. Melinda Shaver; (4) the ALJ failed to resolve a conflict between the RFC assessment and the reasoning level assigned by the Dictionary of Occupational Titles ("DOT") to the jobs the VE identified; and (5) the ALJ relied on VE testimony in response to a hypothetical question that did not include all of her limitations at step five. ECF No. 14.

### IV.   Analysis

#### A.   ALJ's Step-Two Analysis Was Adequate

Plaintiff argues that the ALJ failed to adequately consider her narcolepsy at step two of the sequential evaluation. Specifically, Plaintiff asserts the ALJ should have identified narcolepsy as a medically determinable impairment at step two, because: (1) she reported excessive daytime fatigue and episodes of falling asleep in inappropriate places at her May 2010 sleep study with Dr.

Liphard D'Souza, and (2) Dr. Shaver observed Plaintiff had a confused affect, appeared "spacey," and "appeared to fall asleep at one time"; assessed Plaintiff with narcolepsy; and opined that Plaintiff's "cognitive problems and narcolepsy make it impossible for her to be employed" at her May 2019 psychological consultative examination.  ECF No. 14 at 6-7, R. 395-96, 451-53.

Plaintiff's argument that the ALJ committed error at step two is without merit.  Even assuming the ALJ erred by failing to identify narcolepsy as a medically determinable impairment, this error would be harmless because the ALJ found Plaintiff had three severe impairments at step two and proceeded to the subsequent steps of his analysis.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Furthermore, "a failure to find an impairment medically determinable is essentially a step-four error," that is "obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin,* 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin,* 727 F.3d 1061, 1069 (10th Cir. 2013)).  As explained in Part IV.B. below, the ALJ thoroughly evaluated the evidence related to Plaintiff's narcolepsy, including Dr. D'Souza's May 2010 sleep study and Dr. Shaver's May 2019 consultative examination, in his discussion of the RFC at step four.  The undersigned identifies no step-two error in the ALJ's consideration of this condition.

**B.    ALJ Did Not Err in Formulating the RFC or in Determining Plaintiff Could Return to Her Past Relevant Work**

Plaintiff contends the ALJ improperly performed the analysis required by *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996), at step four.  The ALJ is required to make specific findings

in three phases at step four.  *Winfrey*, 92 F.3d at 1023.  In phase one, the ALJ evaluates the claimant's mental and physical RFC.  *Id.*  In phase two, the ALJ examines the demands of the claimant's past relevant work.  *Id.*  Finally, in phase three, the ALJ ascertains "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] limitations found in phase one."  *Id.* (citing Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  The burden of proving disability remains with the claimant at step four; however, the ALJ has a duty "of inquiry and factual development."  *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993).  Plaintiff challenges the ALJ's conclusions at all three phases of the step-four analysis.

### 1.    **Phase One – RFC Determination**

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence, because he failed to properly evaluate Dr. Shaver's consultative opinion, failed to account for all her impairments and limitations, and improperly formed his own medical opinion regarding her limitations.  ECF No. 14 at 6-7, 9-12.  A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her medical impairments and symptoms.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations.  *Id,* at *7.  In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id*.  Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved.  *Id.*  If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted."  *Id.*

### a. ALJ Properly Evaluated Dr. Shaver's Findings

On March 27, 2019, Dr. Shaver performed a consultative mental status examination of Plaintiff. R. 451-53. Dr. Shaver observed that Plaintiff had a confused affect, appeared "spacey," and "appeared to fall asleep at one time." R. 451-52. Plaintiff reported that she was applying for disability because she had narcolepsy and severely obstructed sleep apnea. R. 451. Dr. Shaver indicated Plaintiff's speech was coherent and relevant; her sensorium was clear; her remote memory was good; her recent memory was fair; and her insight and judgment were fair. R. 452-53. Dr. Shaver diagnosed Plaintiff with narcolepsy and adjustment disorder with depressed mood and indicated Plaintiff's prognosis was guarded. R. 453. Dr. Shaver opined that Plaintiff's "cognitive problems and narcolepsy make it impossible for her to be employed." *Id.*

Plaintiff argues the ALJ improperly rejected Dr. Shaver's narcolepsy diagnosis, opinion that Plaintiff's prognosis is guarded, and opinion that Plaintiff is unable to work. As an initial matter, the Court notes the definition of a "medical opinion" has narrowed for claims filed on or after March 27, 2017, such as Plaintiff's claim. The applicable regulations now define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in enumerated abilities, including the ability to perform the physical or mental demands of work. 20 C.F.R. §§ 404.1513(a)(2), (a)(2)(i), 416.913(a)(2), (a)(2)(i). Conversely, statements from a medical source on issues that are "reserved to the Commissioner," such as statements that a claimant is disabled or unable to work, are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), (c)(3)(i), 416.920b(c), (c)(3)(i). Likewise, a medical opinion does not include "judgments about the nature and severity of [a claimant's] impairments, [her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R.

§§ 404.1513(a)(3), 416.913(a)(3) (defining such evidence as "other medical evidence").  The ALJ is required to articulate how persuasive he finds a medical opinion, based on the opinion's supportability and consistency.  20 C.F.R. §§ 404.1520c(b), (b)(2), 416.920c(b), (b)(2).  In contrast, the regulations do not require the ALJ to articulate the persuasiveness of "other medical evidence."  20 C.F.R. §§ 404.1513(a)(3), 404.1520c, 416.913(a)(3), 416.920c.  The ALJ is also not required to provide "any analysis about how [he] considered" a medical source's "[s]tatements on issues reserved to the Commissioner."  20 C.F.R. §§ 404.1520b(c), (c)(3)(i), 416.920b(c), (c)(3)(i).

In his written decision, the ALJ summarized Dr. Shaver's consultative examination as part of the RFC discussion.  R. 24.  Although not required to do so, the ALJ explained that Dr. Shaver's opinion that Plaintiff's narcolepsy and cognitive problems precluded employment was not persuasive because: (1) the issue of employability is reserved for VE testimony; (2) the disability determination is reserved to the Commissioner; (3) her mental status examination findings were normal apart from finding that Plaintiff's "recent memory was fair"; (4) she did not administer any testing and previous testing performed by Dr. Timothy Doty indicated only mild cognitive impairment; (5) her narcolepsy assessment was based on Plaintiff's own report of such diagnosis; and (6) as a psychologist, she was not qualified to diagnose the physical impairment of narcolepsy.  R. 25-26.  Plaintiff suggests that Dr. Doty's cognitive testing supports Dr. Shaver's opinion, but the ALJ considered such testing, explained that it indicated only mild cognitive impairment, and determined it did not support Dr. Shaver's opinion.  R. 26 (citing Ex. C8F at 2).  Because the ALJ gave more consideration to Dr. Shaver's findings than he was obligated to, there is no basis to find that the ALJ erred in considering her opinion that Plaintiff was unable to work or her narcolepsy diagnosis.  Moreover, Plaintiff fails to explain how her narcolepsy required greater RFC limitations

than the ALJ provided.  Although Dr. Shaver stated Plaintiff could not work, she did not identify any specific functional limitations resulting from Plaintiff's narcolepsy.  It is not the diagnosis, but the resulting functional limitations, that determine disability.  *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).

Plaintiff's argument related to Dr. Shaver's statement that Plaintiff's prognosis was guarded also fails.  The ALJ did not articulate any analysis of such statement, but he did specifically reference it in his decision.  R. 24.  As discussed above, a prognosis does not constitute a medical opinion within the meaning of the regulations.  *See* 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3) (defining "medical opinion" and explaining that a "medical opinion" does not include "judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.").  Accordingly, the ALJ was not required to articulate how persuasive he found Dr. Shaver's prognosis.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  It is clear from the record that the ALJ considered Dr. Shaver's statement regarding Plaintiff's prognosis.  Nothing more was required.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (cleaned up) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

> **b.     ALJ Accounted for all of Plaintiff's Impairments and Limitations**

Plaintiff asserts that the ALJ erred in his RFC assessment, because he failed to account for limitations related to her narcolepsy and daytime fatigue.  Plaintiff contends the ALJ should have included additional limitations in the RFC regarding pace, concentration, unscheduled breaks, and attendance to account for her daytime fatigue and narcolepsy.  Plaintiff points to Dr. Doty's

consultative opinion, Dr. Shaver's narcolepsy diagnosis, and Dr. Kinney's opinion as support for this contention.  ECF No. 14 at 9-10.

The Court finds no error in the ALJ's analysis of Plaintiff's narcolepsy and daytime fatigue. The ALJ thoroughly discussed Plaintiff's hearing testimony and the findings of her treating, consultative, and reviewing physicians in the RFC discussion.  R. 21-26.  The ALJ noted Plaintiff's testimony that she began having problems staying awake in 2012 or 2013; sleeps intermittently for an hour or an hour and a half at a time throughout the day and night; feels groggy or out of energy during the day; and was let go from her nursing home job due to sleep issues.  R. 21.  In discussing Plaintiff's May 2010 sleep study, the ALJ noted Dr. D'Souza's notation that Plaintiff had signs and symptoms of restless leg syndrome ("RLS") and periodic limb movements of sleep ("PLMS"), but none of narcolepsy, as well as Plaintiff's successful treatment for sleep apnea with maximum attempted continuous positive airway pressure ("CPAP") therapy.  R. 22.[2]

As part of his analysis of the medical source opinion evidence, the ALJ found not persuasive Dr. Doty's opinion that Plaintiff had a "poor" ability to sustain concentration and persist in work-related mental tasks due to difficulty maintaining wakefulness.  R. 25.  In reaching this conclusion, the ALJ determined Dr. Doty was not qualified to provide an opinion regarding Plaintiff's ability to maintain wakefulness because he was not a medical doctor.  *Id.*  The ALJ also found unpersuasive Dr. Kinney's opinion that Plaintiff was "physically disabled and completely unable to work" because the finding of disability is an issue reserved to the Commissioner.  R. 26. The ALJ then concluded the remainder of Dr. Kinney's opinion was unpersuasive because Dr.

---

[2] Plaintiff takes issue with the ALJ's reliance on Dr. D'Souza's statement that Plaintiff had no signs of narcolepsy in concluding narcolepsy was not a medically determinable impairment at step two.  As explained in Part IV.A., any error the ALJ made at step two was harmless because the ALJ identified at least one severe impairment, continued his analysis to the next step of the sequential evaluation, and considered Dr. D'Souza's 2010 sleep study in the RFC discussion.

Kinney did not provide an explanation for his limitations and because the record did not contain any of his treatment notes.  *Id.*  The ALJ incorporated the postural and environmental limitations identified by the state agency physician into the RFC, but found his opinion that Plaintiff had no exertional limitations to be unpersuasive.  R. 20, 25.  The ALJ then explained that he limited Plaintiff to light work due to her "reports of fatigue and weakness."  R. 25.  Thus, the ALJ considered the evidence related to Plaintiff's narcolepsy and fatigue and explained how such evidence supported the RFC assessment.  *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.").  Notably, Plaintiff does not challenge the ALJ's reasons for finding the opinions of Dr. Doty and Dr. Kinney unpersuasive, and she does not identify any evidence the ALJ failed to consider.   Thus, Plaintiff's assertion that the evidence supports greater functional limitations than the ALJ found amounts to a request that the Court reweigh the evidence in her favor, which the Court cannot do.  *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may have also supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

Plaintiff further asserts the ALJ failed to incorporate her moderate limitation in concentrating, persisting, or maintaining pace into the RFC assessment.  ECF No. 14 at 10, 14.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ summarized Plaintiff's function report and concluded that she had moderate limitations in the mental functional areas of understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace; and mild limitations in the areas of interacting with others and adapting or managing oneself.  R. 18-19.  Because Plaintiff's mental impairments did

not cause at least two marked limitations or one extreme limitation, the ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria.  R. 19.

Plaintiff asserts the RFC does not contain "any limitations that account for [her] moderate limitation of concentration, persistence, or pace."  ECF No. 14 at 14.  However, an ALJ is not necessarily bound by his step-three findings when determining a claimant's RFC, because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p at *4.  The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the of the various functions contained in the broad mental limitation categories listed at steps two and three.  *Id.*  Furthermore, "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015).

In this case, the ALJ considered Plaintiff's mental impairments and concluded that her adjustment disorder with depressed mood was a severe impairment.  R. 17.  The ALJ then included skill level, task, instruction, and social limitations in the RFC assessment based on Plaintiff's severe adjustment disorder with depressed mood.  R. 20.  In reaching the mental RFC, the ALJ discussed the evidence of record addressing Plaintiff's mental condition, including her hearing testimony and both psychological consultative examinations.  R. 21, 23-26.  Plaintiff points to no records indicating that her mental limitations were more severe than the ALJ indicated in the RFC.  Accordingly, Plaintiff's argument fails.

Plaintiff's contention that the ALJ failed to properly consider the combined effect of her various impairments similarly fails because Plaintiff does not point to any records showing that

those combined impairments would result in greater functional limitations than the ALJ found. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (identifying no error in considering the combined effect of claimant's impairments where ALJ opinion addressed claimant's various impairments, and there was nothing to suggest they were not properly considered).

### c.    ALJ Did Not Form his own Medical Opinion

Plaintiff argues the ALJ's RFC is not supported by substantial evidence, because he did not find any of the available medical source opinions to be persuasive.  ECF No. 14 at 11-12.  It is true that "[t]he ALJ may not substitute his own opinion for that of [Plaintiff's] doctor."  *Miller v. Chater,* 99 F.3d 972, 977 (10th Cir. 1996) (cleaned up); *see also Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician . . . .").  However, an ALJ is not required to have a specific RFC opinion to assess Plaintiff's functional limitations.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (cleaned up).

Contrary to Plaintiff's assertion, the ALJ did not reject every medical source opinion in the record.  As to Plaintiff's mental impairments, the ALJ adopted Dr. Doty's opinion that Plaintiff's ability to engage in work-related mental activities was impaired and included psychologically based limitations in the RFC.  Regarding Plaintiff's physical impairments, the ALJ included the postural and environmental limitations identified by the state agency physician in the RFC, but further limited her to light work based on Plaintiff's own reports of fatigue and weakness.  In other

words, the ALJ's RFC was consistent with Dr. Doty's opinion, but more restrictive than the state agency physician found in light of Plaintiff's own statements.  Thus, the ALJ did not form his own medical opinion, but rather relied on Dr. Doty's opinion, the state agency physician's opinion, as well as Plaintiff's own statements in arriving at the RFC determination.  Because the ALJ thoroughly considered Plaintiff's medical records, the medical source opinion evidence, and Plaintiff's testimony in reaching the RFC assessment, his determination is supported by substantial evidence.

### 2.      Phase Two – Demands of Past Relevant Work

Regarding phase two, Plaintiff asserts the ALJ failed to precisely determine the physical and mental demands of her past relevant work as a cashier.  ECF No. 14 at 10-11.  "Past relevant work" is defined as the claimant's ability to perform either (1) the "actual functional demands and job duties of a particular past relevant job"; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy."  *Andrade v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1050 (10th Cir. 1993) (quoting SSR 82-61) (quotation marks omitted).  Phase two of the step-four analysis requires the ALJ to "determine the physical and mental demands of the claimant's past relevant work," and make "specific findings" supporting that determination.  *Winfrey,* 92 F.3d at 1023.

On September 6, 2018, Plaintiff completed a detailed Work History Report as part of her disability application.  R. 315-22.  In this report, Plaintiff described the demands of her past work as she performed each job.  *Id.*  As relevant to this appeal, Plaintiff provided information regarding her cashier duties of handling and counting money, using technical knowledge or skills, and completing forms, and stated that she was a lead worker in this position.  R. 318.  At the administrative hearing, the ALJ indicated that "jobs one through four" on the Work History Report

appeared to be performed at the level of substantial gainful activity and qualified as past relevant work.[3]  R. 46, 66.  The ALJ then asked the VE to "address those jobs and classify them."  R. 66. The VE testified that Plaintiff's casino job was classified as a cashier position and that the DOT described such job as light work with a specific vocational preparation ("SVP") rating of two. R. 66-67. The ALJ then posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE indicated a hypothetical person with Plaintiff's age, education, and work history could perform Plaintiff's past work as a cashier.  R. 67-68.  The VE also identified alternative jobs such hypothetical person could perform, including laundry folder, small parts assembler, and price marker.  R. 68-69.  The ALJ adopted the VE's testimony that Plaintiff could perform these jobs and determined that they existed in significant numbers in the national economy.  R. 26-28.

Plaintiff asserts the ALJ did not elicit testimony regarding "the details or skills involved" with her past relevant work as a cashier. ECF No. 14 at 11.  As an initial matter, the Court notes Plaintiff's argument that the ALJ should have elicited testimony from the VE as to the reasoning level of her cashier position rests on the assumption that the RFC assessment limits her to jobs with a reasoning level of one.  The Court finds the RFC is not so limiting, as explained in Part IV.C. below.  Moreover, Plaintiff herself described the specific duties she performed and the skills she used at her cashier job on the Work History Report.  While the VE did not explicitly describe the duties of a cashier, he did classify the exertional level and skill level required to perform such job, and he referred the ALJ to the job's DOT listing.  R. 66-67.  The record is therefore not "devoid" of evidence of the demands of Plaintiff's past relevant work such that remand is required. *Cf. Westbrook v. Massanari,* 26 F. App'x 897, 903 (10th Cir. 2002) (finding remand under *Winfrey*

---

[3] Plaintiff's cashier job was listed as job number three on the Work History Report.  R. 315.

necessary when the record is "devoid of even any mention of the demands of past relevant work[.]" (citing *Henrie,* 13 F.3d at 360-61)).  In his written decision, the ALJ stated he reviewed Plaintiff's entire work history, specifically referenced her Work History Report, and noted the VE's testimony that the demands of Plaintiff's past work as a cashier do not exceed the RFC assessment. R. 27.  Thus, it is clear from the record that the ALJ and the VE relied on Plaintiff's own Work History Report as evidence to describe the requirements of her past relevant work.  The Court is satisfied that the ALJ sufficiently developed the record with respect to the demands of Plaintiff's past relevant work through Plaintiff's Work History Report and through the VE's testimony.  The ALJ's conclusions were appropriate, because the ALJ is permitted to rely on VE testimony at phase two of the step-four analysis.  *See Adcock v. Commissioner, SSA,* 748 F. App'x 842, 847 (10th Cir. 2018) (holding that the ALJ may approvingly cite and rely on VE's testimony in support of his step-four findings at phases two and three).  Accordingly, the ALJ complied with phase two of the step-four analysis by determining the physical and mental demands of the claimant's past relevant work and making specific findings supporting that determination.  *See Winfrey*, 92 F.3d at 1023.

In addition, because the ALJ found Plaintiff could perform her past relevant work as a cashier "as generally performed" in the national economy, it was not necessary for Plaintiff to describe her past work in greater detail than she did.  It is the claimant's burden to prove she cannot return to either her specific former job or the same kind of work as generally performed in the national economy.  *See Andrade,* 985 F.2d at 1051; *Dumas v. Colvin,* 585 F. App'x 958, 960 (10th Cir. 2014) (affirming district court's ruling that, "even if the ALJ erred in determining Mr. Dumas retained the RFC for the line attendant job as he had actually performed it, any error was harmless because the ALJ also determined that Mr. Dumas could return to the line attendant job as the job is generally performed in the national economy").

### 3. Phase Three – Ability to Meet the Demands of Past Work Despite Limitations

Plaintiff contends the ALJ could not appropriately complete phase three of the step four analysis due to the errors he made at phases one and two. ECF No. 14 at 11. However, the ALJ properly assessed Plaintiff's RFC at phase one and made adequate findings regarding the demands of her past relevant work as a cashier at phase two. Thus, the ALJ's phase-three finding that the demands of Plaintiff's past cashier work do not exceed the RFC assessment is also proper. Because Plaintiff's argument rests solely on errors the Court has already rejected, her phase-three argument must also fail.

In any event, the ALJ properly identified other work Plaintiff could perform at step five as explained in Part IV.C. below, rendering any error the ALJ may have made in determining Plaintiff could return to her past relevant work at step four harmless. *See, e.g., Murrell v. Shalala,* 43 F.3d 1388, 1390 (10th Cir. 1994) (affirming the ALJ's unchallenged finding of non-disability at step five "regardless of the merit" of claimant's alleged errors at step four).

### C. ALJ's Step-Five Determination is Supported by Substantial Evidence

### 1. ALJ's RFC Determination is Consistent with Reasoning Level Two

Plaintiff asserts the ALJ erred in concluding that her RFC is compatible with the jobs of laundry folder, assembler (small parts), and price marker, because an unresolved conflict exists between the RFC limitation of "simple and routine tasks" and the reasoning level the DOT assigns to these jobs. ECF No. 14 at 12-15. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and

Language Development.  *Id.*  There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest.  *Id.*

The DOT assigns a reasoning level of two to the jobs the VE identified and the ALJ relied upon at step five.  DOT §§ 369.687-010 (laundry sorter), 706.684-022 (assembler (small parts)), 209.587-034 (price marker).  Jobs with a reasoning level of two require a worker to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  *Id.*

Plaintiff specifically asserts the RFC limitation of "simple and routine tasks" restricts her to jobs with a reasoning level of one, and thus a conflict exists between the RFC and the level-two reasoning required by jobs the VE identified at step five.  Plaintiff relies on the Social Security Administration's Program Operations Manual System ("POMS") as support for the premise that a limitation to simple, repetitive tasks eliminates jobs requiring level-two reasoning.  *See* POMS § DI 25020.010(A)(3) (unskilled work requires the abilities to "understand, carry out, and remember simple instructions" and to "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"); POMS § DI 25020.010(B)(4) (semiskilled and skilled work require the ability to understand, remember, and carry out "detailed instructions").  Plaintiff's argument is not persuasive.

The Tenth Circuit has stated that an RFC limitation of simple and routine tasks "appears" consistent with level-two reasoning.  *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005).  The Tenth Circuit has also determined that an RFC limitation of "simple, repetitive and routine work" should not "be construed as a limitation to jobs with a reasoning level rating of one."  *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008).  Here, Plaintiff makes the same argument the

Tenth Circuit rejected in *Stokes*, and her reliance on the POMS is misplaced.  *See, e.g., Rainwater v. Colvin,* No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2 jobs are not inconsistent with" an RFC limitation of understanding, remembering, and carrying out simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). Plaintiff does not persuasively explain how her RFC is inconsistent with a GED reasoning level of two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*.  Accordingly, there is no conflict between Plaintiff's RFC limitation of "simple and routine tasks" and the level-two reasoning required by the laundry sorter, assembler (small parts), and price marker jobs.

## 2.    ALJ's Hypothetical Question was Proper

Finally, Plaintiff contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including additional mental limitations to account for her moderate limitation in maintaining concentration, persistence, or pace.  For the reasons set forth in Part IV.B. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper.  Plaintiff's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected.  *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment.  The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

## V.       Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is

**AFFIRMED.**

**SO ORDERED** this 29th day of July, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**